**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOXMIND CANADA ENTERPRISES LTD.,<br><br>       Plaintiff,<br>v.<br><br>ABCTEC, et al.,<br><br>       Defendants. | CASE NO. Case 1:21-cv-05146-KPF |

**MOVING DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

**DIAZ, REUS & TARG, LLP**
    **AHMAND JOHNSON**
    **ZHEN PAN**
    **100 Southeast Second Street**
    **3400 Miami Tower**
    **Miami, Florida 33131**
    **(305) 375-9220**

*Counsel for Moving Defendants Acbery, Anzir, Beijiang-Zs, Callenbach, Caotop, Cindbest, Conqload, Dolphin Tech US, Endless-Us, Enjoygoodproduct, Guo Xiao Yan, Hollosport, Hongpu-AA, Jarcold, Johnson's Home, Kongjiandianzishangwu, Munash Pro, Newpeppr, Oniisee Store, Priamaa, Rich-Ting, Run Duck, Sharlovy-Us Direct, Songguodong, Sunay, Sweat2020, Ulove Best, Xibaopeng, Yalaidir, Ycl-US, Yopen, Zhangyaowu, Zhengbaomaoyi, and Zhongsi-US*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

    I.    Plaintiff's Claims for Defendant's Alleged Infringement on Plaintiff's Federally Registered Trademark .................................................................................................................. 2

    II.   Amazon's Registration Requirement for Merchants and Address Verification Process ................. 2

    III.   Information on Sales of Allegedly Infringing Products by Acbery and Anzir ............................ 4

    IV.   Procedural History ...................................................................................................... 6

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ........................................................................................................................ 8

    I.    The Court Should Dismiss This Action against the Moving Defendants for Improper Service of Process. .................................................................................................................... 8

        A.   The Hague Convention is applicable here. ............................................................... 8

        B.   Plaintiff must comply with the Hague Convention in serving the Moving Defendants. ........ 10

        C.   Dismissal for insufficient service of process is appropriate even after the Court granted alternative service. ....................................................................................................... 14

    II.   The Court Should Dismiss This Action against Acbery and Anzir for Lack of Personal Jurisdiction ................................................................................................................. 15

        A.   This Court lacks personal jurisdiction under section 302(a)(1). ...................................... 16

        B.   This Court lacks personal jurisdiction under section 302(a)(3). ...................................... 19

            1.   Plaintiff cannot show that it suffered injury in New York. ............................................. 19

            2.   Plaintiff cannot establish personal jurisdiction under subsection 302(a)(3)(i). ............... 21

            3.   Plaintiff cannot establish personal jurisdiction under subsection 302(a)(3)(ii). ............. 22

        C.   Exercising personal jurisdiction would violate the Due Process Clause............................. 23

        D.   This Court lacks personal jurisdiction under Rule 4(k). .................................................. 25

CONCLUSION ..................................................................................................................... 25

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
    14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) .................................... 8,10

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ............................................................................... 22, 24

*Alibaba Group Holding Ltd. v. Alibabacoin Found.*,
    18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ......................................... 25

*Am. Girl, LLC v. Zembrka*,
    1:21-CV-02372 (MKV), 2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021)...................... 18, 20, 21

*Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*,
    10 CIV. 1853 PGG JCF, 2012 WL 4801452 (S.D.N.Y. Oct. 5, 2012) .............................. 11, 13

*Ambriz Trading Corp. v. URALSIB Fin. Corp.*,
    11 CIV. 4420 SAS, 2011 WL 5844115 (S.D.N.Y. Nov. 21, 2011) ......................................... 14

*Art Akiane LLC v. Mardel, Inc.*,
    20-CV-05643, 2021 WL 3269837 (N.D. Ill. July 30, 2021)................................................... 24

*Bowman v. Winder*,
    14 CIV. 3428 AT, 2015 WL 1639255 (S.D.N.Y. Mar. 25, 2015) .......................................... 22

*Brownstone Inv. Group LLC v. Bonner & Partners, LLC*,
    20-CV-7351 (AJN), 2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021) .............................. 16, 19, 22

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
    935 F. Supp. 2d 615 (S.D.N.Y. 2013)................................................................... *passim*

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 (2d Cir.2005)................................................................................... 11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................... 24

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ....................................................................... 16, 23, 24

*Chloe, Div. of Richemont N. Am., Inc. v. Queen Bee of Beverly Hills, LLC*,
    571 F. Supp. 2d 518 (S.D.N.Y. 2008)..................................................................... 24

*Dickerson v. Napolitano*,
  604 F.3d 732 (2d Cir. 2010) ...................................................................... 8

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001) ...................................................................... 19

*Dynegy Midstream Services v. Trammochem*,
  451 F.3d 89 (2d Cir. 2006) ........................................................................ 7

*Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co., Ltd., Inc.*,
  93 CIV. 6160, 1995 WL 224774 (S.D.N.Y. Apr. 14, 1995) ...................................... 24

*Export–Import Bank of the United States v. Asia Pulp & Paper Co.*,
  No. 03 Civ. 8554, 2005 WL 1123755 (S.D.N.Y. May 11, 2005) ................................. 13

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*,
  No. 05 Civ. 4260, 2006 WL 2015188 (S.D.N.Y. July 13, 2006)........................... 14, 15

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir.2014) ...................................................................... 23

*In Re Sinohub, Inc. Securities Litigation*,
  12 CIV. 8478 WHP, 2013 WL 4734902 (S.D.N.Y. Aug. 14, 2013) ......................... 11, 12

*ISI Brands, Inc. v. KCC Intern., Inc.*,
  458 F. Supp. 2d 81 (E.D.N.Y. 2006).............................................................. 19

*Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule
  "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019)........................................... 9, 10, 15

*Mattel, Inc. v. Anderson*,
  04 CIV. 5275RCC, 2005 WL 1690528 (S.D.N.Y. July 18, 2005)................................ 19

*Mende v. Milestone Tech., Inc.*,
  269 F.Supp.2d 246 (S.D.N.Y.2003) ............................................................... 8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ........................................................................ 8

*Otter Products LLC v. Custom Offshore Tackle LLC*,
  CV 12-9311 GAF AJWX, 2013 WL 815910 (C.D. Cal. Mar. 4, 2013) ................................ 23

*Panacea Sols., Inc. v. Roll*,
  05 CIV 10089 RCC, 2006 WL 3096022, (S.D.N.Y. Oct. 31, 2006) ........................... 20, 22

*Rio Properties, Inc. v. Rio International Interlink*,
  284 F.3d 1007 (9th Cir.2002)............................................................................ 13

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*,
  27 F. Supp. 3d 379 (S.D.N.Y. 2014)..........................................................*passim*

*SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.*,
  427 F. Supp. 3d 497 (S.D.N.Y. 2019).............................................................. 10, 11

*Securities & Exchange Commission v. Anticevic*,
  No. 05 Civ. 6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) .................... 6, 12, 13

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015) .................................................................. 8

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ................................................................................... 11, 13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................... 23, 24

**Rules**

Fed. R. Civ. P. 4 ..........................................................................................*passim*

Fed. R. Civ. P. 12 ........................................................................................ 8, 14

N.Y. C.P.L.R. § 302(a) ................................................................................*passim*

**Treatises**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
  Commercial Matters ..................................................................................*passim*

Defendants (1) Acbery, (2) Anzir, (3) Beijiang-Zs, (4) Callenbach, (5) Caotop, (6) Cindbest, (7) Conqload, (8) Dolphin Tech US, (9) Endless-US, (10) Enjoygoodproduct, (11) Guo Xiao Yan, (12) Hollosport, (13) Hongpu-AA, (14) Jarcold, (15) Johnson's Home, (16) Kongjiandianzishangwu, (17) Munash Pro, (18) Newpeppr, (19) Oniisee Store, (20) Priamaa, (21) Rich-Ting, (22) Run Duck, (23) Sharlovy-Us Direct, (24) Songguodong, (25) Sunay, (26) Sweat2020, (27) Ulove Best, (28) Xibaopeng, (29) Yalaidir, (30) Ycl-US, (31) Yopen, (32) Zhangyaowu, (33) Zhengbaomaoyi, and (34) Zhongsi-US (collectively, the "Moving Defendants") respectfully submit this Memorandum of Law in Support of Motion to Dismiss the Complaint:

## **INTRODUCTION**

Plaintiff filed its Complaint against numerous China based Amazon merchants under seal and, simultaneously, moved *ex parte* to serve the Moving Defendants via email. Based on Plaintiff's unilateral representations, this Court granted the relief sought by Plaintiff. However, unbeknownst to the Court, in seeking such relief, Plaintiff advanced false statements of material facts, some of which were even made under the penalty of perjury. In doing so, Plaintiff consciously flouted the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), a treaty approved by the President of the United States and ratified by a supermajority of the Senate.

Moreover, in a desperate move to wrangle as many merchants as possible to maximize its potential relief, Plaintiff manufactured facts necessary to establish personal jurisdiction over certain merchants by engaging in a ruse to entrap them into selling allegedly infringing products, despite those merchants having never sold any such products to consumers in New York. There is no basis for this Court to exercise personal jurisdiction over those merchants under the circumstances. Doing so would violate the Due Process Clause of the Fourteenth Amendment.

1

As a result, this Court should dismiss this action against the Moving Defendants.

## BACKGROUND

### I.  Plaintiff's Claims for Defendant's Alleged Infringement on Plaintiff's Federally Registered Trademark

On June 10, 2021, Plaintiff filed its Complaint under seal against the Moving Defendants, who are Amazon registered online merchants, for alleged (i) trademark counterfeiting, (ii) trademark infringement, (iii) false designation of origin, and (iv) violation of the New York unfair competition law.  *See* Compl. ¶¶ 44-82.[1]  The trademark at issue is a standard character mark – "POP IT!" – federally registered by Plaintiff (the "Trademark").  *Id.* ¶ 13.  Plaintiff alleges that the Moving Defendants infringed the Trademark by "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling [alleged] Counterfeit Products to U.S. consumers, including those located in the state of New York . . . ."  *Id.* ¶ 1.  The Complaint groups more than 90 Defendants together without distinguishing each Defendant's alleged infringing activities.  *See id.* ¶¶ 29-43.

### II.  Amazon's Registration Requirement for Merchants and Address Verification Process

In order to be an online merchant on Amazon.com, each applicant is required to provide its name and address, which would be publicly displayed on the seller account.  *See* Amazon Seller Central, Seller Identity Verification ("Proof of address: Name and address must be visible.") (November 11, 2021), a copy is attached hereto as Exhibit 1; *see also* Annie Palmer, *Amazon Mails Postcards to Sellers to Verify Whether Their Addresses Are Real*, CNBC (May 7, 2021), https://www.cnbc.com/2021/05/07/amazon-mails-postcards-to-sellers-to-prove-their-addresses-are-real.html ("requiring third-party sellers to make their business names and addresses public"),

---

[1]     Citations to "Compl. ¶ _" are to Plaintiff's Complaint. Citations in the form "[D.E._ ]" are to the docket entries.  Unless otherwise indicated, in quotation throughout this Memorandum, all emphases are added and all internal quotations and citations are omitted.

a copy is attached hereto as Exhibit 2. By way of example, Defendant Acbery store's business name and address are displayed on its Amazon profile on its user account, publicly available at https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&market placeID=ATVPDKIKX0DER&orderID=&protocol=current&seller=A2XKYJ8CCBLM5V&ssh mPath=. Each Moving Defendant's mailing address can be found on its publicly available user account. *See* Declaration of the representative of each Moving Defendant,[2] ¶ 4, Exs. A.

As early as in 2020, Amazon begun verifying sellers' mailing addresses to weed out counterfeiters on its marketplace and "to provide a safe and trustworthy shopping experience for our customers and selling partners." Ex. 2. As a result, prior to the commencement of this lawsuit, the mailing addresses of the following 19 Defendants have been verified by Amazon as true and genuine: (1) Acbery; (2) Anzir; (3) Caotop; (4) Conqload; (5) Endless-Us; (6) Enjoygoodproduct; (7) Kongjiandianzishangwu; (8) Munash Pro; (9) Newpeppr; (10) Oniisee Store; (11) Priamaa; (12) Run Duck; (13) Sharlovy-Us Direct; (14) Sweat2020; (15) Ulove Best; (16) Xibaopeng (17) Yopen; (18) Zhengbaomaoyi; (19) Zhongsi-US (collectively, the "Verified Moving Defendants"). *See* Declaration of the representative of each Verified Moving Defendant,[3] ¶¶ 5-7.

---

[2]    They are Wenjuan Xie (Defendant Acbery), Zhiye Wang (Anzir), Jian Liang (Beijiang-Zs), Li Quan (Callenbach), Cangru Zhang (Caotop), Lixiang Wu (Cindbest), Baohua Yan (Conqload), Yin Wang (Dolphin Tech US), Le Wang (Endless-US), Zuquan Huang (Enjoygoodproduct), Yiling Zhu (Guo Xiao Yan), Yingchun Xu (Hollosport), Yixin Huang (Hongpu-AA), Di Liu (Jarcold), Yang Gao (Johnson's Home), Xialian Zheng (Kongjiandianzishangwu), Fuqiang Liu (Munash Pro), Zhiyong Xu (Newpeppr), Yong Lei (Oniisee Store), Mingxu Wang (Priamaa), Hong Zhu (Rich-Ting), Linxuan Dong (Run Duck), Zhuwu Li (Sharlovy-US), Juli Zheng (Songguodong), Min Xiao (Sunay), Hanlong Zhao (Sweat2020), Te Wen (Ulove Best), Wenna Lin (Xibaopeng), Zhijin Xu (Yalaidir), Zhen Liang (Ycl-US), Jiafu Chen (Yopen), Qinghua Wang (Zhangyaowu), Jinxiang Zheng (Zhengbaomaoyi), Zhichao Xu (Defendant Zhongsi-US).

[3]    They are Wenjuan Xie (Defendant Acbery), Zhiye Wang (Anzir), Cangru Zhang (Caotop), Baohua Yan (Conqload), Le Wang (Endless-US), Zuquan Huang (Enjoygoodproduct), Xialian Zheng (Kongjiandianzishangwu), Fuqiang Liu (Munash Pro), Zhiyong Xu (Newpeppr), Yong Lei (Oniisee Store), Mingxu Wang (Priamaa), Linxuan Dong (Run Duck), Zhuwu Li (Sharlovy-US), Hanlong Zhao (Sweat2020), Te Wen (Ulove Best), Wenna Lin (Xibaopeng), Jiafu Chen (Yopen),

To verify sellers' business address is authentic and accurate, Amazon will send out postcards to a group of selected sellers.  Each postcard has a unique verification code for the recipient seller to enter on its internal seller portal (also referred to as "Seller Central").  *See id.* ¶¶ 5-6.  Once the seller correctly enters the code, its listed address will be verified by Amazon, and a green "verified" sign will appear on the seller's internal portal.  *See id.* ¶ 7.  "Amazon will block any accounts that prove to have an illegitimate address" and "withhold funds from sellers' accounts."  Ex. B.

Prior to this lawsuit, each Verified Moving Defendant received a postcard mailed from Amazon's office located at 2646 Rainier Ave S Ste 1020, Seattle, WA 98144, to its address listed on the seller's profile.  *See* Declaration of the representative of each Verified Moving Defendants, ¶ 5.  After it entered the verification code, a green "verified" sign appears below the address on the internal portal, demonstrating the successful verification by Amazon.  *See id.* ¶¶ 6-7 Exs. B, C.

As to the other 15 Moving Defendants who have not been selected by Amazon to verify their addresses, the addresses listed on their respective storefronts are true and genuine, as well.  *See* Declaration of the representative of each of those Defendants[4] whose addresses have not been verified, ¶ 5.  Indeed, none of them had access to their accounts blocked or funds withheld by Amazon for having an illegitimate address.  *See id.* ¶ 6.

## III.    Information on Sales of Allegedly Infringing Products by Acbery and Anzir

On June 17, 2021, Amazon notified Acbery that Amazon removed its product with Amazon Standard Identification Number ("ASIN") B08YRKPJBN for allegedly infringing Plaintiff's

---

Jinxiang Zheng (Zhengbaomaoyi), Zhichao Xu (Defendant Zhongsi-US).

[4]      They are Jian Liang (Defendant Beijiang-Zs), Li Quan (Callenbach), Lixiang Wu (Cindbest), Yin Wang (Dolphin Tech US), Yiling Zhu (Guo Xiao Yan), Yingchun Xu (Hollosport), Yixin Huang (Hongpu-AA), Di Liu (Jarcold), Yang Gao (Johnson's Home), Hong Zhu (Rich-Ting), Juli Zheng (Songguodong), Min Xiao (Sunay), Zhijin Xu (Yalaidir), Zhen Liang (Ycl-US), Qinghua Wang (Zhangyaowu).

Trademark ("Acbery Allegedly Infringing Product").  *See* Declaration of Wenjuan Xie in Support of Motion to Dismiss ("Declaration of Xie"), ¶ 10.  On the same day, Amazon notified Anzir that Amazon removed its product with ASIN B08TRQ9M46 for allegedly infringing Plaintiff's Trademark ("Anzir Allegedly Infringing Product").  *See* Declaration of Zhiye Wang in Support of Motion to Dismiss the Complaint ("Declaration of Wang"), ¶ 10.

The price for Acbery Allegedly Infringing Product ranged from $8.99 to $10.99 per unit. Declaration of Xie, ¶ 11.  Acbery sold a total of 17 units of Acbery Allegedly Infringing Product to the United States.  *See id.* ¶ 13.  The only sale of Acbery Allegedly Infringing Product within New York was ordered by Plaintiff.  *See id.* ¶ 12.  The gross revenue generated through selling Acbery Allegedly Infringing Product was $182.06, only a portion of which was ultimately received by Acbery after Amazon deducted its 15% referral fee.  *See id.* ¶¶ 14, 15.

Similarly, the price for Anzir Allegedly Infringing Product was $14.99 per unit. Declaration of Wang, ¶ 11.  Anzir sold a total of 17 units of Anzir Allegedly Infringing Product to the United States.  *See id.* ¶ 12.  Anzir did not sell any Anzir Allegedly Infringing Product within New York.  *See id.* ¶ 13.  The gross revenue generated through selling Anzir Allegedly Infringing Product was $270.50, only a portion of which was ultimately received by Anzir after Amazon deducted its 15% referral fee.  *See id.* ¶¶ 14, 15.

As to its general business operations, neither Acbery nor Anzir has any office, directors, officers, employees, sales representatives, distributors, or retailers in the United States.  *See* Declaration of Xie ¶ 16; Declaration of Wang ¶ 16.  Nor do they own, rent, or possess any property in New York.  Declaration of Xie ¶ 17; Declaration of Wang ¶ 17.  Prior to this lawsuit, both Acbery and Anzir merely displayed its respective Allegedly Infringing Products on its storefront and made it generally available for sale.  Declaration of Xie ¶ 18; Declaration of Wang ¶ 18.

Neither of the Defendants have ever specifically marketed, advertised, or otherwise promoted its Allegedly Infringing Product in New York, or specifically to New York consumers.  Declaration of Xie ¶ 18; Declaration of Wang ¶ 18.

## IV.  Procedural History

On June 10, 2021, in addition to filing the Complaint, Plaintiff moved *ex parte* (the "*Ex Parte* Motion") for, without limitation, alternative service on all defendants.  *See* [D.E. 16] at 19-21.  Plaintiff predicated its purported entitlement to alternative service on the basis that: (i) the Moving Defendants "are located in China"; (ii) "they are limited to correspondence by email"; (iii) "[n]one of the Defendants have disclosed their mailing addresses."  *Id.*  In support, Plaintiff's counsel stated, under the penalty of perjury, that "all Defendants fail to disclose an accurate or complete address or any other contact information on their respective User Accounts or Merchant Storefronts on Amazon" and that "the true identities, locations and contact information of Defendants [ ] are unclear and virtually impossible for Plaintiff to obtain independently."  [D.E. 17], ¶¶ 23, 24.  However, during the pre-motion conference held by this Court on September 14, 2021, in response to this Court's query as to Plaintiff's access to a verifiable address for Moving Defendants, the same counsel tacitly admitted that she had not confirmed the lack of verifiable address for the Moving Defendants: "I chose to look at defendant ABC TEC's storefront.[5]  There is an address listed there . . . . this is just one example[.]"  Transcript of the Pre-Motion Conference dated September 14, 2021, 16:10-17:2.  Relevant excerpt is attached hereto as Exhibit 3.

Notably, the *Ex Parte* Motion does not identify any effort undertaken by Plaintiff to discover Moving Defendants' mailing addresses or explain why it would be "virtually impossible" to obtain them.  *See* [D.E. 16] at 19-21.  Citing to *SEC v. Anticevic* ("*Anticevic*"), No. 05 CV 6991,

---

[5]      It is important to note that the undersigned firm does not, and has never represented "ABC TEC" in this litigation.

(S.D.N.Y. Feb. 8, 2009), Plaintiff argued that it may serve international defendants under Rule 4(f)(3).  [D.E. 16] at 19.  The *Ex Parte* Motion fails to address the Hague Convention at all.  *Id.*

In addition, Plaintiff alleges that this Court has personal jurisdiction over the Moving Defendants based upon "the checkout pages completed by Epstein Drangel and Epstein Drangel's purchase of [alleged] Counterfeit Products ***from a sampling of Defendants***."[6]  *Id.* at 5.

The *Ex Parte* Motion does not specify how many, if any, alleged Counterfeit Products were sold by each Moving Defendant to New York consumers, or how many among those sold to New York were ordered by Plaintiff.  *See id.*  Instead, Plaintiff speculates that: "It is ***highly likely*** that Defendants have shipped [alleged] Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of [alleged] Counterfeit Products from each and every Defendant through an account associated with the New York Address . . . 2) Epstein Drangel purchased [alleged] Counterfeit Products from a representative sampling of Defendants to New York, 3) and all Defendants accept payment in U.S. dollars."  *Id.*

The Court granted the *Ex Parte* Motion on the same day it was filed.[7]  At this time, the Moving Defendants were not aware of Plaintiff's actions in this lawsuit.  On June 30, 2021, Plaintiff purported to serve the Complaint on the Moving Defendants via email.

## <u>LEGAL STANDARD</u>

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Dynegy Midstream Services v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).  "In considering a motion to dismiss pursuant to 12(b)(5) for

---

[6]    Epstein Drangel is Plaintiff's counsel of record.  For simplicity, this Memorandum will refer to purchases "ordered by Plaintiff's counsel" as those "ordered by Plaintiff."

[7]    This Order is not on the case docket.

insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Mende v. Milestone Tech., Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y.2003). Where "a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

Similarly, "in reviewing a Rule 12(b)(2) motion, a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015). Plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

## ARGUMENT

### I.   The Court Should Dismiss This Action against the Moving Defendants for Improper Service of Process.

#### A.   The Hague Convention is applicable here.

Rule 4(f) governs service upon defendants in a foreign country. Rule 4(f)(1) permits service outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[.]" FED. R. CIV. P. 4(f)(1). The Convention "***shall*** apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. On the other hand, it "shall not apply where the address of the person to be served with the document is not known." *Id.* "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018).

By no means can Plaintiff establish that it exercised reasonable diligence to discover the

Moving Defendants' addresses for service of process and that it was unsuccessful in finding such addresses. As a threshold matter, the mailing address of each Moving Defendant is publicly available on Defendant's Amazon user account. *See* Declaration of the representative of each Moving Defendant, ¶ 4, Exs. A. Not only did Plaintiff fail to undertake any effort, much less reasonable diligence, to ascertain each Moving Defendant's address, Plaintiff also misrepresented in the *Ex Parte* Motion that the Moving Defendants "are limited to correspondence by email" and that "[n]one of the Defendants have disclosed their mailing addresses." [D.E. 16] at 19-21. Plaintiff's representations are contradicted by its counsel's own statement before this Court that she was, in fact, able to identify the address of ABC TEC, among other defendants. Additionally, the Complaint asserts that Plaintiff's counsel reviewed each Moving Defendant's storefront and user accounts and that "printouts of [alleged] Infringing Listings from Defendants' ***User Accounts*** and Merchant Storefronts are included in Exhibit C." Compl. ¶ 30. Curiously, absent from Exhibit C are printouts of the Moving Defendants' profiles on their user accounts, which list the Moving Defendants' mailing addresses.

Plaintiff's counsel went on to declare "under the penalty of perjury" that "all Defendants fail to disclose an accurate or complete address or any other contact information on their respective User Accounts or Merchant Storefronts on Amazon" and that "the true identities, locations and contact information of Defendants [ ] are unclear and virtually impossible for Plaintiff to obtain independently." [D.E. 17], ¶¶ 23, 24. However, "[a] generalized suspicion about an address's validity does not make it 'unknown' under the Hague Service Convention." *Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"* ("*Luxottica*"), 391 F. Supp. 3d 816, 823–24 (N.D. Ill. 2019). "More specific proof is needed. Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a reasonable

investigation of the address's validity before finding that it is unknown under" the Hague Convention. *Id.* (citing *Advanced Access*, 2018 WL 4757939, at *5).

Moreover, Plaintiff's representations as to the inaccuracy of the Moving Defendants' mailing addresses are specious, at best. The addresses of the 19 Verified Moving Defendants have been verified by Amazon as true and genuine. Declaration of the representative of each Verified Moving Defendant, ¶¶ 5-7. Specifically, prior to the commencement of this lawsuit, each Verified Moving Defendant received a postcard mailed to the address listed on its user account from Amazon's Seattle office for address verification. After entering the verification code on the postcard, a green "verified" sign appears below the address on the seller's internal portal, showing the successful verification by Amazon. *See id.* ¶¶ 5-6. Indeed, none of the Verified Moving Defendants experienced any withhold of funds by Amazon due to unsuccessful verification of address. *See id.* ¶ 9. Similarly, as to the remaining 15 Moving Defendants who had not been selected by Amazon for address verification, the addresses listed on their user accounts are true and genuine, as well. *See* Declaration of the representative of each of those Defendants whose addresses have not been verified, ¶ 5. None of these Defendants had been denied access to their accounts or had funds withheld by Amazon for maintaining an illegitimate address. *See id.* ¶ 6.

As such, Plaintiff cannot show that it specifically investigated the validity of the Moving Defendants' addresses before seeking alternative service. As such, Plaintiff fails to carry its "burden to show that defendants' addresses were unknown. Consequently, the Hague Service Convention applies." *Luxottica*, 391 F. Supp. 3d at 824.

## B.    Plaintiff must comply with the Hague Convention in serving the Moving Defendants.

"Compliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *SeaCube Containers LLC*

*v. Compass Containers & Shipping Services Ltda.*, 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, (1988)). Because China is a signatory to the Hague Convention, service pursuant to the Hague Convention "is the exclusive means through which service can be effectuated when serving a [Chinese] defendant." *SeaCube Containers*, 427 F. Supp. 3d at 500; *S.E.C. v. China Ne. Petroleum Holdings Ltd.* ("*China Ne. Petroleum*"), 27 F. Supp. 3d 379, 397 (S.D.N.Y. 2014) ("Since both the United States and China are signatories to the Hague Convention, subsection (1) applies.").

"The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir.2005).

"[C]ourts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under Rule 4(f)(3)." *In re Sinohub, Inc. Sec. Litig.*, 12 CIV. 8478 WHP, 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013). "When courts have allowed for alternative service, they have done so when plaintiffs have been unable, despite diligent efforts, to serve the defendant in the [foreign country] according to the Hague [ ] Convention procedures." *China Ne. Petroleum Holdings*, 27 F. Supp. 3d at 398 (alteration in original); *see also Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 CIV. 1853 PGG JCF, 2012 WL 4801452, at *9 (S.D.N.Y. Oct. 5, 2012) ("The advisory committee [of Rule 4(f)] indicates that 'resort may be had' to alternative means of service when the foreign state's Central Authority does not promptly effect service. This requires that the serving party have attempted to use those procedures without success. Case law, as well, supports the notion that a party ***must*** attempt service in compliance with the Hague Service Convention before petitioning for

permission to serve by alternative means.").

*In Re Sinohub, Inc. Securities Litigation* is illustrative here.  There, the plaintiff sought alternative service under Rule 4(f)(3), alleging that it was unable to locate two defendants living in China after it "searched public databases of corporate entities located in China and Hong Kong." 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013).  The Court held that alternative service was inappropriate under the circumstances, as plaintiff's "request to bypass the Hague Convention after a trail of public records turned cold strikes this Court as a measure of convenience rather than necessity."  *Id.*  The Court therefore ordered the plaintiff to serve the defendants "through the Hague Convention."  *Id.* at *3.

It is undisputed that Plaintiff did not first attempt to serve the Moving Defendants through means compliant with the Hague Convention.  In fact, Plaintiff consciously ignored the Moving Defendants' addresses listed on their publicly accessible Amazon user accounts, misrepresented to the Court that "[n]one of the Defendants have disclosed their mailing addresses" and further, under the penalty of perjury, stated that "all Defendants fail to disclose an accurate or complete address or any other contact information on their respective User Accounts."  [D.E. 17], ¶¶ 23, 24. In doing so, Plaintiff flouted the procedural rules and international treaties by deliberately misrepresenting the existence and accuracy of Moving Defendants' mailing addresses, in its attempt to circumvent service under the Hague Convention.  *See China Ne. Petroleum*, 27 F. Supp. 3d at 398 (observing "there is no evidence that the SEC undertook such diligent efforts [before seeking alternative service under Rule 4(f)(3), as it] made one attempt to serve Ju pursuant to the Hague Convention, and did so using an address that was more than three years old at the time").

Plaintiff relied on *Securities & Exchange Commission v. Anticevic* for its purported entitlement to alternative service, arguing that Rule 4(f)(3) "enables a court to grant an alternative

method of service so long as it: (1) is not prohibited by international agreement; and (2) comports

with constitutional notions of due process." [D.E. 16] at 19. Plaintiff's reliance is misplaced. As

this Court observed in *Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*:

> To be sure, the court in *Securities & Exchange Commission v. Anticevic,* No. 05 Civ. 6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009), asserted that "[a] plaintiff is ___not___ required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Id.* at *3. This may be true in a case where no international agreement, such as the Hague Service Convention, governs service in the receiving country. *See Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007, 1015 n. 4 (9th Cir.2002) (noting that Rule 4(f)(3) provides options for alternative service when no international agreement applies), *cited in Anticevic,* 2009 WL 361739, at *3; *Export–Import Bank of the United States v. Asia Pulp & Paper Co.,* No. 03 Civ. 8554, 2005 WL 1123755, at *2–5 (S.D.N.Y. May 11, 2005) (allowing alternative means of service when receiving country was "not party to any applicable treaty or agreement"), *cited in Anticevic,* 2009 WL 361739, at *3. However, if the Hague Service Convention applies, its provisions are "mandatory" and "pre-empt[ ] inconsistent methods of service" allowed or required by state or federal statute or rule. *See Volkswagenwerk Aktienqesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988); *Rio Properties,* 284 F.3d at 1015 n. 4 (stating that applicability of Hague Service Convention would restrict federal court's options under Rule 4(f)(3)).

10 CIV. 1853 PGG JCF, 2012 WL 4801452, at *9–10 (S.D.N.Y. Oct. 5, 2012) (alternations and

emphasis in original) (service "was ineffective" because plaintiff "did not attempt to serve

[defendant] pursuant to the Hague Service Convention"). Indeed, the plaintiff in *Anticevic* had

been unable to effectuate service on the defendant for more than two years since the filing of the

complaint, during which time they, unlike Plaintiff, "twice attempted to serve [the defendant],

pursuant to Rule 4(f)(1) and the Hague Convention . . . but that both of these efforts have failed."

2009 WL 361739, at *1. Therefore, *Anticevic* does not support a finding of entitlement to

alternative service here.

Because the Moving Defendants' mailing addresses are publicly available, "[s]ervice on

[the Moving Defendants] [must] be attempted according to the terms of the Hague Convention." *Ambriz Trading Corp. v. URALSIB Fin. Corp.*, 11 CIV. 4420 SAS, 2011 WL 5844115, at *5 (S.D.N.Y. Nov. 21, 2011) (third alternation in original).  Accordingly, this Court should dismiss the action against the Moving Defendants until Plaintiff properly serves them through means comporting with the Hague Convention.  *See Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 Civ. 4260, 2006 WL 2015188, at *3-4 (S.D.N.Y. July 13, 2006) (dismissing complaint under Rule 12(b)(5) because "plaintiff made no attempt to serve defendant Nishat through means comporting with the Hague Convention").

### C.    Dismissal for insufficient service of process is appropriate even after the Court granted alternative service.

Rule 4(f)(3) provides that service on a foreign litigant can be effectuated "by other means not prohibited by international agreement, as the court orders."  FED. R. CIV. P. 4(f)(3).  Courts within the Second Circuit "generally impose two additional threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."  *China Ne. Petroleum Holdings*, 27 F. Supp. 3d at 397; *Off-White LLC v. 0225XIANGCHUN*, 19 CIV. 11626 (KPF), 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) (Failla, J.) (citing *China Ne. Petroleum Holdings*., 27 F. Supp. 3d 379).  "These requirements are imposed in order to prevent parties from 'whimsically seeking an alternate means of service.'"  *China Ne. Petroleum*, 27 F. Supp. 3d at 397.

Here, Plaintiff did not attempt to effectuate service on the Moving Defendants before seeking alternative service.  Additionally, Plaintiff does not argue that any service attempts under the Hague Convention were thwarted by the Central Authority of China.  "Accordingly, the declaration does not permit a finding that China's official action not to cooperate with the

Convention causes the delays." *Luxottica*, 391 F. Supp. 3d at 824 (N.D. Ill. 2019); *see also Gateway Overseas*, 2006 WL 2015188, at *4 ("Plaintiff's mere assertion that attempting to serve defendant [in Pakistan] ... through the Hague Convention would be futile is an insufficient defense to defendant's 12(b)(5) motion."). Instead, Plaintiff chose to advance false statements in its *Ex Parte* Motion that "[n]one of the Defendants have disclosed their mailing addresses" in its attempt to shoehorn the instant circumstances into an exception to the Hague Convention. [D.E. 16] at 21. As a result, the *Ex Parte* Motion appeared to give this Court reasons "to believe that the manner of service authorized was adequate, but, like many such orders in similar cases, it was obtained *ex parte* and under seal." *Luxottica*, 391 F. Supp. 3d at 827. As was the case in *Luxottica*, Plaintiff's purported entitlement to alternative service "does not withstand scrutiny under full adversary briefing." *Id.* As such, given Plaintiff's lack of entitlement to alternative service under Rule 4(f)(3) *ab initio*, dismissal for improper service of process is warranted here. *Id.* at 827-28 (granting dismissal for failure to comply with the Convention where the court granted alternative service under Rule 4(f)(3) prior to defendants' appearance).

## II.    The Court Should Dismiss This Action against Acbery and Anzir for Lack of Personal Jurisdiction.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process. [T]he Lanham Act does not provide for nationwide service of process[;] therefore this Court must look to New York's jurisdictional statutes to determine personal jurisdiction." *Buccellati Holding Italia SPA v. Laura Buccellati, LLC* ("*Buccellati*"), 935 F. Supp. 2d 615, 620 (S.D.N.Y. 2013). "The Court engages in a two-step analysis to determine whether it has personal jurisdiction over a defendant: it (1) applies the long-arm statute of the forum state and then (2) analyzes whether the exercise of that personal jurisdiction 'comports with

the Due Process Clause.'" *Brownstone Inv. Group LLC v. Bonner & Partners, LLC*, 20-CV-7351 (AJN), 2021 WL 3423253, at *2 (S.D.N.Y. Aug. 5, 2021) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010)).

Plaintiff relies on sections 302(a)(1) and (3) of the New York Civil Practice Law and Rules ("CPLR") in its attempt to establish personal jurisdiction over Defendants Acbery and Anzir. Compl. ¶ 3.  In the alternative, Plaintiffs alleges that the Court has personal jurisdiction over them under Rule 4(k).  *Id.*  However, none of these rules would afford this Court personal jurisdiction over Acbery and Anzir.  Moreover, exercising personal jurisdiction here would violate the Due Process Clause.

### A.    This Court lacks personal jurisdiction under section 302(a)(1).

Section 302(a)(1) permits this Court to "exercise personal jurisdiction over any non-domiciliary[,] who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "Accordingly, in determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction."  *Buccellati*, 935 F. Supp. 2d at 621 (alternation in original).  "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."  *Id.*  "As to § 302(a)(1)'s second requirement, a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Id.*  Plaintiff cannot meet either of the requirements to establish personal jurisdiction over Acbery and Anzir.

*Buccellati* is instructive here. There, the defendants had "no office, employees, sales representatives, distributors, or retailers in New York." *Id.* at 622. The defendants did not own or rent any property in New York. *Id.* The only sale to a New York resident of defendants' merchandise was to the plaintiffs' investigator. *Id.* The defendants also attended various meetings with fashion editors in New York, which led to no publicity for defendants' products. *Id.* The Court found that defendants' activities were "not sufficient to justify this Court's exercise of personal jurisdiction over" them. *Id.* As to plaintiff's purchase of defendants' allegedly infringing products, the Court first noted that it was "obvious" that the plaintiffs made this purchase "in order to bolster their argument that this Court has personal jurisdiction over [the d]efendants." *Id.* at 623. The Court went on to observe:

> While there is not unanimity on this issue, the vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff. Courts in this District and elsewhere have expressed "hostility towards finding jurisdiction under such potentially manufactured circumstances." *Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.,* No. 05 Civ. 2744(KMK), 2007 WL 3378256, at *5 (S.D.N.Y. Nov. 9, 2007) [(citing more than 15 additional cases on point).]
>
> The logic of these cases is that a plaintiff cannot rely solely on its own manipulative acts to create jurisdiction, and that in such circumstances the defendant cannot be said to have purposefully availed itself of the privilege of conducting activities in the state selected by plaintiff. Moreover, in cases where, as here, plaintiffs' causes of action are founded on notions of consumer confusion, courts have concluded that it is improper to rely on a transaction—for jurisdictional purposes—in which the purchaser obviously was not confused as to the source of the merchandise.

*Id.* at 623-24. The Court held that it would "not rely on the sale of [the allegedly infringing product] to Plaintiffs' investigator as a basis for exercising personal jurisdiction over the defendants" under section 302(a)(1). *Id.* at 624-25 ("Meetings and communications that never result in a business relationship or transaction do not provide a basis for the exercise of personal

17

jurisdiction.").

Similarly, this Court recently dismissed a trademark infringement case for lack of personal jurisdiction because the plaintiff there could not "point to a single sale that Defendants made into New York or any action that Defendants took to target their sales activity into this state." *Am. Girl, LLC v. Zembrka*, 1:21-CV-02372 (MKV), 2021 WL 1699928, at *5 (S.D.N.Y. Apr. 28, 2021). "The Court is unconvinced that a Defendant simply owning a[n interactive] website that is 'accessible' from New York is enough to find that it transacts business here." *Id.* at *6.

The same result is compelled here to find that this Court lacks personal jurisdiction under section 302(a)(1). Neither Acbery nor Anzir had any office, employees, sales representatives, distributors, or retailers in the State of New York. *See* Declaration of Xie ¶ 16; Declaration of Wang ¶ 16. Nor do they own, rent, or possess any property in New York. Declaration of Xie ¶ 17; Declaration of Wang ¶ 17. Anzir did not sell any Anzir Allegedly Infringing Product to New York consumers. Declaration of Wang ¶ 13. As to Acbery, the only sale of Acbery Allegedly Infringing Product to a New York consumer was to Plaintiff, who explicitly admitted that it did so for the sole purpose of establishing personal jurisdiction. Declaration of Xie, ¶ 12; [D.E. 16] at 5. In addition, the instant circumstances present an even more compelling basis for a dismissal for lack of personal jurisdiction under CPLR 302(a)(1) in that Acbery and Anzir did not attend any meetings or otherwise specifically market its Allegedly Infringing Product in New York. Declaration of Xie ¶¶ 16-18; Declaration of Wang ¶¶ 16-18.

This Court should apply the ruling of the vast majority of courts which have held that a plaintiff "cannot rely solely on its own manipulative acts to create jurisdiction" and that Acbery and Anzir "cannot be said to have purposefully availed [themselves] of the privilege of conducting activities in the state selected by plaintiff" under CPLR 302(a)(1). *Buccellati*, 935 F. Supp. 2d at

624; *see also ISI Brands, Inc. v. KCC Intern., Inc.*, 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006) (noting that plaintiff's agents' purchase of infringing product had "nothing to do with Plaintiff's action for infringement since [plaintiff] cannot claim to have been confused as to with whom [they] [were] dealing") (second and third alterations in original); *Mattel, Inc. v. Anderson*, 04 CIV. 5275RCC, 2005 WL 1690528, at *2 (S.D.N.Y. July 18, 2005) (lack of personal jurisdiction because "defendant[ ] cannot be said to have purposefully availed [herself] of the protections of this forum when it was an act of someone associated with plaintiff, rather than [her] web site advertising, that brought [her] products into this forum.") (alternation in original); *Brownstone*, 2021 WL 3423253, at *3 (dismissing for lack of personal jurisdiction under CPLR 302(a)(1) where the plaintiff predicated personal jurisdiction on a purchase made by plaintiff's paralegal, observing: "plaintiff's paralegal was clearly not confused when she purchased one of defendants' subscriptions").

### B.    This Court lacks personal jurisdiction under section 302(a)(3).

Pursuant to section 302(a)(3), this Court may exercise personal jurisdiction over any non-domiciliary, who commits a tortious act without the state causing injury to person or property within the state if the defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. 302(a)(3).

### 1.    Plaintiff cannot show that it suffered injury in New York.

"Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs of injury test, which asks them to locate the original event which caused the injury."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  The

Second Circuit has held that the "original event" for purposes of CPLR 302(a)(3) occurs where "the first effects of the tort that ultimately produced the final economic injury is located." *Id.* at 84–85. "In trademark cases, the first effects of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business." *Panacea Sols., Inc. v. Roll*, 05 CIV 10089 RCC, 2006 WL 3096022, at *5 (S.D.N.Y. Oct. 31, 2006).

Plaintiff cannot show the first effects of Defendants' alleged trademark infringement or dilution occurred in New York. By its own admission, Plaintiff "is a corporation organized and existing under the laws of Canada" with an address in Quebec, Canada. Compl. ¶ 3. Moreover, the Complaint fails to name any specific business activities undertaken by Plaintiff in New York. *See id.* ¶¶ 7-19 (alleging Plaintiff's business operations). Instead, it merely alleges: "The success of the Pop It Products is due in part to FoxMind's marketing and promotional efforts[, which] include advertising and promotion through social media and other internet-based and print advertising, among other efforts domestically and abroad, including in New York." *Id.* ¶ 26. In addition, Plaintiff cannot show that either Acbery or Anzir actually sold any Acbery/Anzir Alleged Infringing Product to New York consumers, other than the single sale ordered by Plaintiff. "[N]or does it allege that any New York customers were actually confused by Defendants' [products]." *Panacea Sols.*, 2006 WL 3096022, at *5; *Am. Girl, LLC v. Zembrka*, 2021 WL 1699928, at *8 ("Plaintiff also cannot establish an injury in New York using this analysis because it has failed to allege or offer any evidence of any New York customers who were confused by the alleged counterfeits or who purchased them.").

Therefore, Plaintiff fails to establish personal jurisdiction under CPLR 302(a)(3), in that it cannot show any "injury caused by Defendants' alleged infringement occurred in New York." *Panacea Sols.*, 2006 WL 3096022, at *5 (no personal jurisdiction under CPLR 302(a)(3) where

the plaintiff is a Delaware corporation with its principal place of business in New Jersey); *Am. Girl*, 2021 WL 1699928, at *7 (dismissing for lack of personal jurisdiction under section 302(a)(3)(ii) because the plaintiff failed to show its injury in New York because "[u]nder this controlling law, Defendants' alleged infringement would cause injury to Plaintiff in California" as "Plaintiff American Girl, LLC is a limited liability [company] ... with its principal place of business located at 333 Continental Boulevard, TWR 15-1, El Segundo, CA 90245").

> **2.    Plaintiff cannot establish personal jurisdiction under subsection 302(a)(3)(i).**

Assuming, *arguendo*, that the requirement for "injury in New York" was not dispositive of the issue, Plaintiff nonetheless fails to show that either Acbery or Anzir "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York.  N.Y. C.P.L.R. 302(a)(3)(i).  Neither Acbery nor Anzir operates its business in New York.  Declaration of Xie ¶ 18; Declaration of Wang ¶ 18.  They never own nor rent real property in the United States.  Declaration of Xie ¶ 17; Declaration of Wang ¶ 17.   Nor do they have any directors, officers, employees, sales representatives, distributors, or retailers in the United States.  *See* Declaration of Xie ¶ 16; Declaration of Wang ¶ 16.  As to revenue derived from selling Acbery Allegedly Infringing Product in New York, Acbery sold only one unit of such Product to Plaintiff.  Declaration of Xie, ¶ 12.  In this respect, Anzir made zero sales of Anzir Allegedly Infringing Product to consumers in New York.  Declaration of Wang, ¶ 13.  As such, Plaintiff cannot demonstrate that either Defendant derived "substantial revenue from" selling its Allegedly Infringing Product.  Therefore, this Court lacks personal jurisdiction over Acbery and Anzir under CPLR 302(a)(3)(i).

### 3. Plaintiff cannot establish personal jurisdiction under subsection 302(a)(3)(ii).

In addition to causing injury within New York, which Acbery and Anzir did not do, CPLR § 302(a)(3)(ii) requires that a defendant "must have expected, or reasonably should have expected, its allegedly tortious actions to have consequences in New York" and derives substantial revenue from interstate or international commerce. *Buccellati*, 935 F. Supp. 2d at 626. "New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required." *Id.* "Thus, the defendant must make a discernable effort to directly or indirectly serve the New York market." *Id.* Plaintiff cannot meet this requirement.

In this regard, this Court has, on numerous occasions, held that it lacks personal jurisdiction under CPLR 302(a)(3)(ii) where, as here, the only sale of the Allegedly Infringing Product by Acbery was the single sale made to Plaintiff. *See, e.g.*, *id.*; *Brownstone*, 2021 WL 3423253, at *4 (no personal jurisdiction where, other than plaintiff's manufactured sale, the plaintiff merely alleged that the defendants' website is available to consumers in New York). By logic extension, section 302(a)(3)(ii) does not afford this Court personal jurisdiction over Anzir, as well.

Indeed, "[c]reating a site, like placing a product into the stream of commerce, may be felt nationwide – or even worldwide – but, without more, it is not an act purposefully directed toward the forum state." *Bowman v. Winder*, 14 CIV. 3428 AT, 2015 WL 1639255, at *3 (S.D.N.Y. Mar. 25, 2015) (alteration in original). It is well settled that "the mere operation of a website containing or using others' trademarks does not constitute a tort anywhere the site can be viewed." *Panacea Sols.*, 2006 WL 3096022, at *5; *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an interactive website ... should not

open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."); *Otter Products LLC v. Custom Offshore Tackle LLC*, CV 12-9311 GAF AJWX, 2013 WL 815910, at *3 (C.D. Cal. Mar. 4, 2013) ("there is no evidence in this case suggesting that Defendants' eBay page, despite being interactive, targets or is in any way directed toward California.").

Furthermore, Plaintiff cannot show that either Acbery or Anzir "derives substantial revenue from interstate or international commerce." The gross revenue generated by Acbery and Anzir through selling the products at issue was $182.06 and $270.50, respectively, which are greater than what ultimately received by Acbery and Anzir after Amazon deducted its 15% referral fee pursuant to its policy. *See* Declaration of Xie ¶ 15; Declaration of Wang ¶ 15.

Therefore, this Court lacks personal jurisdiction under section 302(a)(3)(ii).

### C.    Exercising personal jurisdiction would violate the Due Process Clause.

Moreover, exercising personal jurisdiction over Acbery and Anzir would not comport with the Due Process Clause of the Fourteenth Amendment, which requires "sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 134 (2d Cir.2014). To determine whether jurisdiction meets this constitutional standard, a court must evaluate: (1) "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and (2) "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 164 (2d Cir.2010).

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277,

285 (2014).  "But the plaintiff cannot be the only link between the defendant and the forum."  *Id.*

"Due process requires that a defendant be haled into court in a forum State based on his own

affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes

by interacting with other persons affiliated with the State."  *Id.* at 286. "These same principles

apply when intentional torts are involved.  In that context, it is likewise insufficient to rely on . . .

the 'unilateral activity' of a plaintiff."  *Id.*

Even before *Walden*, this Court held that "it would violate due process to permit a plaintiff

to manufacture personal jurisdiction by purchasing an allegedly infringing product in a plaintiff's

forum of choice.  '[M]inimum requirements inherent in the concept of fair play and substantial

justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully

engaged in forum activities.'"  *Chloe, Div. of Richemont N. Am., Inc. v. Queen Bee of Beverly*

*Hills, LLC,* 571 F. Supp. 2d 518, 526 (S.D.N.Y. 2008) (quoting *Burger King Corp. v. Rudzewicz,*

471 U.S. 462 (1985)), *judgment vacated on other grounds*, 616 F.3d 158 (2d Cir. 2010); *Elbex*

*Video Kabushiki Kaisha v. Taiwan Regular Elec. Co., Ltd., Inc.*, 93 CIV. 6160, 1995 WL 224774,

at *3 (S.D.N.Y. Apr. 14, 1995) (where only in-forum sale of an allegedly infringing product had

been arranged by the plaintiff, "the exercise of jurisdiction over [defendant] on the facts properly

before this court would offend traditional notions of 'fair play and substantial justice'").

After *Walden*, the Seventh Circuit Court of Appeal has recognized that this plaintiff-centric

take on the exercise of personal jurisdiction is not viable post *Walden*.  *See Advanced Tactical*,751

F.3d at 802 (observing that "after *Walden* there can be no doubt that the plaintiff cannot be the

only link between the defendant and the forum"); *see also Art Akiane LLC v. Mardel, Inc.*, 20-CV-

05643, 2021 WL 3269837, at *3 (N.D. Ill. July 30, 2021) (no minimum contact where "all of the

transactions on which [the plaintiff] relies for personal jurisdiction over the defendants [ ] were

sales initiated not by the defendants but by [the plaintiff] itself").

This Court should not permit Plaintiff to manufacture personal jurisdiction over Acbery by virtue of its own purchase of a unit of Acbery Allegedly Infringing Product for the sole purpose of personal jurisdiction. Doing so would violate the Due Process Clause. Likewise, there is no minimum contact for this Court to exercise personal jurisdiction over Anzir, given the lack of sales of Anzir Allegedly Infringing Product to New York.

### D.    This Court lacks personal jurisdiction under Rule 4(k).

Finally, Plaintiff cannot establish personal jurisdiction over Acbery and Anzir under Federal Rule of Civil Procedure 4(k), which establishes personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2). "To trigger Rule 4(k)(2), a defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction.'" *Alibaba Group Holding Ltd. v. Alibabacoin Found.*, 18-CV-2897 (JPO), 2018 WL 2022626, at *5 (S.D.N.Y. Apr. 30, 2018). "Even if [Acbery or Anzir are] not subject to jurisdiction in New York, [Plaintiff] has provided no evidence that [Acbery and Anzir are] similarly not subject to jurisdiction in each of the other 49 states." *Id.* In addition, exercising jurisdiction would violate the United States Constitution.

### CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that this Court (i) dismiss this lawsuit against all Moving Defendants for insufficient service of process, (ii) lift the injunction imposed against the Moving Defendants, at least until Plaintiff properly serves the Moving Defendants in compliance with the Hague Convention, and (iii) dismiss this lawsuit against Acbery and Anzir for lack of personal jurisdiction with prejudice.

Dated: November 12, 2021    Respectfully submitted,

            DIAZ REUS & TARG, LLP
            100 Southeast Second Street
            3400 Miami Tower
            Miami, Florida 33131
            Telephone (305) 375-9220

            By: */s/ Zhen Pan*
            Ahmand Johnson (Florida Bar No. 38905)
            Admitted *Pro Hac Vice*
            Attorney E-mail: ajohnson@diazreus.com
            Zhen Pan (New York Reg. No. 5860846)
            Attorney E-mail: zpan@diazreus.com
            *Counsel for the Moving Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2021, I electronically filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send notification of such filing to all parties.

            By: */s/ Zhen Pan*
            Zhen Pan