**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOXMIND CANADA ENTERPRISES LTD., <br><br> Plaintiff, <br><br> v. <br><br> ABCTEC, et al., <br><br> Defendants. | CASE NO. Case 1:21-cv-05146-KPF |

**MOVING DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

>**DIAZ, REUS & TARG, LLP**
>**AHMAND JOHNSON**
>**ZHEN PAN**
>**100 Southeast Second Street**
>**3400 Miami Tower**
>**Miami, Florida 33131**
>**(305) 375-9220**
>
>*Counsel for Moving Defendants Acbery, Anzir, Beijiang-Zs, Callenbach, Caotop, Cindbest, Conqload, Dolphin Tech US, Endless-Us, Enjoygoodproduct, Guo Xiao Yan, Hollosport, Hongpu-AA, Jarcold, Johnson's Home, Kongjiandianzishangwu, Munash Pro, Newpeppr, Oniisee Store, Priamaa, Run Duck, Sharlovy-Us Direct, Songguodong, Sweat2020, Ulove Best, Xibaopeng, Yalaidir, Ycl-US, Yopen, Zhangyaowu, Zhengbaomaoyi, and Zhongsi-US*

## **TABLE OF CONTENTS**

I.   Plaintiff's Service Was Insufficient Because Plaintiff Must First Attempt Service under the Hague Convention............................................................................................................. 1

    A.   Plaintiff's defective service cannot be excused by the Moving Defendants' actual notice of the lawsuit. ................................................................................................................ 1

    B.   Plaintiff fails to carry its burden to show that the Moving Defendants' addresses were unknown. ................................................................................................................ 1

    C.   Plaintiff concedes that it did not first attempt to serve the Moving Defendants pursuant to the Hague Convention. ........................................................................................... 4

II.   Plaintiff Fails to Establish Personal Jurisdiction over Acbery and Anzir........................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
  14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ...................................... 2, 3

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014).............................................................................................. 9

*Am. Girl, LLC v. Zembrka*,
  2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021) ........................................................................ 10

*Am. Network, Inc. v. Access Am./Connect Atlanta*, Inc.,
  975 F. Supp. 494 (S.D.N.Y. 1997) ....................................................................................... 10

*Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*,
  10 CIV. 1853, 2012 WL 4801452 (S.D.N.Y. Oct. 5, 2012) ....................................................... 8

*Ambriz Trading Corp. v. URALSIB Fin. Corp.*,
  11 CIV. 4420 SAS, 2011 WL 5844115 (S.D.N.Y. Nov. 21, 2011) .......................................... 7

*Art Akiane LLC v. Mardel, Inc.*,
  20-CV-05643, 2021 WL 3269837 (N.D. Ill. July 30, 2021) .................................................... 10

*Bogle–Assegai v. Connecticut*,
  470 F.3d 498 (2d Cir. 2006) ................................................................................................ 1

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
  935 F. Supp. 2d 615 (S.D.N.Y. 2013) ............................................................................ 9, 10

*Burda Media, Inc. v. Viertel*,
  417 F.3d 292 (2d Cir. 2005) ................................................................................................ 8

*Cartier v. Seah LLC*,
  598 F. Supp. 2d 422 (S.D.N.Y. 2009) ............................................................................. 8, 9

*Chloe v. Queen Bee of Beverly Hills*,
  616 F.3d 158 (2d Cir. 2010) ................................................................................................ 8

*Energy Brands Inc. v. Spiritual Brands*, Inc.,
  571 F. Supp. 2d 458 (S.D.N.Y. 2008) ................................................................................ 10

*In re Crysen/Montenay Energy Co.*,
  166 B.R. 546 (S.D.N.Y. 1994) ............................................................................................. 1

*In re GLG Life Tech Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) ................................................................................ 5,6

*In re Indu Craft, Inc.*,
  749 F.3d 107 (2d Cir. 2014) ........................................................................................ 9

*In re Kingate Mgmt. Ltd. Litig.*,
  746 Fed. Appx. 40 (2d Cir. 2018) ............................................................................... 4

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
  15 CIV. 8459 (LGS), 2016 WL 3748480 (S.D.N.Y. July 8, 2016). ........................... 9

*Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) ....................................... 2, 3, 6, 7

*Mattel, Inc. v. Animefun Store*,
  18 CIV. 8824 (LAP), 2020 WL 2097624 (S.D.N.Y. May 1, 2020) ............................ 5

*Off-White LLC v. 0225XIANGCHUN*,
  19 CIV. 11626 (KPF), 2020 WL 3618963 (S.D.N.Y. July 2, 2020) ........................... 5

*Panacea Sols., Inc. v. Roll*,
  05 CIV 10089 RCC, 2006 WL 3096022 (S.D.N.Y. Oct. 31, 2006) .......................... 10

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*,
  27 F. Supp. 3d 379 (S.D.N.Y. 2014) ........................................................................ 4,5

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*,
  312 F.R.D. 329 (S.D.N.Y. 2015) ................................................................................ 5

*Tevra Brands LLC v. Bayer Healthcare LLC*, 19-CV-04312-BLF, 2020 WL 3432700 (N.D. Cal. June 23, 2020). ........................................................................................ 6, 7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) .................................................................................................... 7

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................................... 9

**Rules**

CPLR 302 ............................................................................................................... 8, 10

FED. R. CIV. P. 4(f) ................................................................................................ *passim*

The Moving Defendants[1] respectfully submit their reply in support of motion to dismiss[2]:

## I. Plaintiff's Service Was Insufficient Because Plaintiff Must First Attempt Service under the Hague Convention.

### A. Plaintiff's defective service cannot be excused by the Moving Defendants' actual notice of the lawsuit.

Plaintiff appears to suggest that its service of process on the Moving Defendants was sufficient because Defendants "are reasonably apprised of this lawsuit." Opp'n at 4-6. This is meritless, as it ignores established precedent that "the fact that [a defendant] had actual knowledge of the action is not sufficient to deny its motion to dismiss, in that actual notice is no substitute for valid service of process." *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 554 (S.D.N.Y. 1994); *see also Bogle–Assegai v. Connecticut*, 470 F.3d 498, 507–09 (2d Cir. 2006) (affirming dismissal for improper service and rejecting the plaintiff's argument that the defendants had actual knowledge of her claims). Therefore, the fact that the Moving Defendants have been apprised of this lawsuit is insufficient to establish that the service at issue was proper.

### B. Plaintiff fails to carry its burden to show that the Moving Defendants' addresses were unknown.

Plaintiff concedes that it had access to the Moving Defendants' addresses before this lawsuit. *See* Opp'n at 4-5. Tellingly, Plaintiff expressly admits that its counsel reviewed "many of the Moving Defendants[' addresses] displayed on their Merchant Storefronts at the time [counsel] conducted its investigation." *Id.* This further illustrates Plaintiff's misrepresentation of material facts in moving for alternative service that "[n]one of the Defendants have disclosed their

---

[1] Thirty-four (34) Defendants initially moved to dismiss. In December of 2021, Defendants Rich-Ting and Sunay were dismissed from this action with prejudice. While Defendant Zhengbaomaoyi has reached an agreement in principle to settle with Plaintiff, it joins in this Brief pursuant to this Court's existing briefing schedule, pending full resolution of claims against it.
[2] Citations in this brief follow those in Defendants' Memorandum in Support of Motion to Dismiss [D.E. 66]. Unless otherwise indicated, in quotation throughout this brief, all emphases are added and all internal quotations and citations are omitted.

mailing addresses." *See* [D.E. 16] at 20 (citing Yamali Decl., ¶¶ 10-12, 23-24.).

Plaintiff ostensibly relied solely on its counsel's purported anecdotal experience in asserting that online merchants "more often than not display either partial addresses or false locations." Opp'n at 7. Without presenting competent evidence, Plaintiff asserts that its "Beijing office identified a handful of Moving Defendants' addresses as being incomplete in lacking unit and/or building numbers." *Id.* at 5. This is insufficient to circumvent service under the Hague.

*Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) is instructive here. As is the case here, the plaintiffs in *Luxottica*, owners of several trademarks, sued 906 online merchants for allegedly offering and selling counterfeit goods. *See* 391 F. Supp. 3d at 819. In opposition to certain China-based defendants' motion to dismiss for failure to perform service under the Hague Convention, the plaintiffs argued that "[o]ftentimes, such return addresses [of online merchants] are illegitimate," but pointed to no evidence substantiating their contentions. *Id.* at 823. The court found that the plaintiffs "neglected to mention an important source of information" – the moving defendants' mailing addresses – in obtaining the relief for alternative service,[3] observing: "When it issued the TRO, the court had no reason to think that defendants' addresses could be determined with reasonable diligence." *Id.* at 822. While the court noted the existence of counterfeit goods in China, it held that "the fact that defendants allegedly offer counterfeit goods for sale does not automatically mean that every address listed for them is invalid or that they are evading service of process." *Id.* Applying *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 14-CV-

---

[3] The court observed: "Particularly because plaintiffs in these types of cases often proceed ex parte, it is hoped that counsel will bring to the court's attention in future cases any mailing addresses of which they are aware, even if the address is believed to be invalid. Similarly, the court should be informed if counsel reasonably believes that mailing addresses may be available from online marketplaces." *Id.* n. 3.

1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018), the court dismissed the lawsuit because the plaintiffs failed to follow Hague Convention protocols in serving those defendants, concluding:

> Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a "reasonable investigation" of the address's validity before finding that it is "unknown" under Article 1. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so.

*Id.* at 823-24 (quoting *Advanced Access*). The same result is warranted here. "A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address." *Id.* at 822. Plaintiff fails to show any "reasonable investigation" of the Moving Defendants' addresses for service of process. *See* Opp'n at 4, 5. The fact that some online merchants provide partial or false addresses does not automatically mean that every address provided by a foreign online merchant is invalid, which in turn does not obviate Plaintiff's obligation under the Hague Convention. Plaintiff's bald assertion that "a handful of Moving Defendants' addresses [are] incomplete in lacking unit and/or building numbers," without specifically identifying such Defendants, simply lacks evidentiary weight.

Contrary to Plaintiffs' speculative generalizations concerning the accuracy of Defendants' addresses, 19 of the 32 Moving Defendants' addresses have been verified by one of Amazon's Seattle offices as true and genuine. *See* [D.E. 66] at 3-4. The remaining 13 Moving Defendants' addresses are true and genuine, as well. *See id.* The declarations of Defendants Kongjiandianzishangwu, Newpeppr, and Zhangyaowu that their sole places of business are in China are true and correct. To obtain approval for selling children's toys in the U.S.,[4] these three Defendants retained vendors for the approval process and, unbeknownst to them, during the

---

[4] Amazon's policy on "Selling Children's Toys in the US" is available at https://sellercentral.amazon.com/gp/help/external/THG4SWQN3FCZD8D.

3

process, their addresses were changed by the vendors. *See* Declaration of Xialian Zheng (Kongjiandianzishangwu), Declaration of Zhiyong Xu (Newpeppr), Declaration of Qinghua Wang (Zhangyaowu), ¶¶ 3-5. As soon as Defendants discovered the change of address, they immediately rectified the issue by reverting to their (Chinese) addresses. *Id.* ¶ 6. Notably, the addresses of Kongjiandianzishangwu and Newpeppr have been verified by Amazon as true and genuine. Declaration of Zheng, Declaration of Xu, ¶ 7. Plaintiff's argument that "Plaintiff is unaware of whether Moving Defendants changed their addresses after Plaintiff's investigation" is disingenuous. In seeking alternative service, Plaintiff presented that "upon information and belief, [all Defendants] are located in China." [D.E. 16] at 19. Plaintiff cannot deny its knowledge of Defendants' updated (Chinese) addresses, as Rule 4(f) applies only to service "not within any judicial district of the United States." FED. R. CIV. P. 4(f). To the extent Plaintiff believed that these Defendants were located in the U.S., it had no basis to seek alternative service under Rule 4(f), flouting basic procedural rules in the process.

As to the other 29 Defendants, Plaintiff fails to provide any competent evidence showing the contrary and, consequently, concedes that their addresses are genuine. *See In re Kingate Mgmt. Ltd. Litig.*, 746 Fed. Appx. 40, 43 (2d Cir. 2018) ("Plaintiffs waived this argument by failing to raise it before the District Court in response to Defendants' first motion to dismiss.").

### C. Plaintiff concedes that it did not first attempt to serve the Moving Defendants pursuant to the Hague Convention.

Plaintiff attempted to justify the alternative service by arguing that "service by email remains the most effective means." Opp'n at 4-5. However, what Plaintiff conveniently omitted from its Opposition is the burden on the part of Plaintiff to show its "***diligent efforts***, to serve the defendant in the [foreign country] according to the Hague [ ] Convention procedures." *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 397-98 (S.D.N.Y. 2014) (emphasis and

4

alteration in original); *see also Off-White LLC v. 0225XIANGCHUN*, 19 CIV. 11626 (KPF), 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) (Failla, J.) (citing *China Ne. Petroleum*).  Indeed, Plaintiff fails to show any attempt to serve the Moving Defendants through means enumerated under the Hague Convention before seeking alternative service.  *See* Opp'n at 4-5.

Further, the legal authorities cited by Plaintiff do not support Plaintiff's purported entitlement to alternative service, and are readily distinguishable from the instant circumstances. In *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, the plaintiff established reasonable attempts to comply with the Hague Convention; to wit, by making multiple queries to the Central Authority and waiting nearly eight months before seeking alternative service.  312 F.R.D. 329, 331 (S.D.N.Y. 2015).  By contrast, Plaintiff undertook no such efforts here.  Similarly, in *Mattel, Inc. v. Animefun Store*, the Hague Convention did not govern the service of process because there was "only partial, incomplete or no physical addresses whatsoever associated with the majority of the Wang Defendants' User Accounts."  18 CIV. 8824 (LAP), 2020 WL 2097624 (S.D.N.Y. May 1, 2020). This is not the case here, as each Moving Defendant's true and accurate mailing address is publicly available.  Plaintiff fails to present any competent evidence to the contrary.

Plaintiff, citing *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012), argues that "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."  Opp'n at 8.  However, Plaintiff's generalized fear of delay is insufficient to justify the alternative service.  *See Sec. & Exch. Comm'n v. Cluff*, 17CV2460RMBKNF, 2018 WL 896027, at *4 (S.D.N.Y. Jan. 10, 2018).  Indeed, this Court in *Cluff* rejected a substantially similar argument in denying alternative service:

> The plaintiff relies on *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 266-67, for the proposition that "service under the Hague Convention would take numerous months." However, in that case counsel to the plaintiff submitted his declaration in which he

5

> explained the steps he undertook in his attempt to use the Hague Convention, stating, on September 6, 2012, that service of process on the defendant in China "would take at least six to eight months to complete." The plaintiff did not take any steps to attempt to use the Hague Convention to serve James Shaoul with process, and it failed to explain how the evidence that serving a defendant in China, in 2012, by using the Hague Convention would take six to eight months supports the plaintiff's assertion that serving James Shaoul in Israel, in 2017, by using the Hague Convention "would take numerous months." ***The mere assertion of delay in service, without any evidence supporting it, is not sufficient to show that "service under the Hague Convention would take numerous months."*** The plaintiff failed to act diligently when it did not attempt to use the Hague Convention or take steps that would evidence the amount of time it would take to serve James Shaoul in Israel by using the Hague Convention. Moreover, the plaintiff did not take any steps to attempt service in any other manner authorized by Rule 4(f) before seeking "authorization to serve the Second Amended Complaint on Defendant James Shaoul ... by email." The plaintiff failed to establish that it attempted reasonably to effectuate service on James Shaoul before making this motion and that the circumstances are such that they warrant an "authorization to serve the Second Amended Complaint on Defendant James Shaoul ... by email."

*Id.* Similarly, here, Plaintiff does not present any evidence to substantiate the purported delay in serving China-based Defendants under the Hague Convention in June 2021. As observed in *Tevra Brands LLC v. Bayer Healthcare LLC*, cited by Plaintiff, "where a plaintiff fails to show that service through the Convention would be unsuccessful or result in unreasonable burden or delay, simply citing COVID-19 as an obstacle is not sufficient to bypass the requirements of the Hague Convention." 19-CV-04312-BLF, 2020 WL 3432700, at *5 (N.D. Cal. June 23, 2020). *Luxottica* also held that the plaintiffs' "affidavit [which] expresses frustration with the delays but does not explain why they occur . . . does not permit a finding that China's official action not to cooperate with the Convention causes the delays." 391 F. Supp. 3d at 824. Therefore, Plaintiff's speculative concern over delays cannot justify alternative service here. Finally, Plaintiff's reliance on *Microsoft Corp. v. Goldah.com Network Tech. Co., Ltd.* is misplaced, as the urgency in that case

6

– defendants' past conduct that shifted their assets in the U.S. to China – does not exist here. *See* 17-CV-02896-LHK, 2017 WL 4536417 (N.D. Cal. Oct. 11, 2017). This Court should not hold that urgency exists in every infringement dispute simply because the defendant resides overseas.

In fact, *Tevra Brands* militates decidedly against Plaintiff's position, as the court there denied alternative service because "there is a presumption that a Central Authority has six months before a party can use alternate methods of service." 2020 WL 3432700, at *5. This Court holds the same view. *See Ambriz Trading Corp. v. URALSIB Fin. Corp.*, 11 CIV. 4420 SAS, 2011 WL 5844115, at *5 (S.D.N.Y. Nov. 21, 2011) (granting motion to dismiss and observing "if a Central Authority is dilatory or refuses to cooperate, a plaintiff may request a U.S. court to order alternative service methods pursuant to Rule 4(f)(3), so long as the plaintiff waits at least six months from her initial application to the foreign Central Authority.").

Plaintiff's attempt to question the Hague Convention's mandatory nature fails when Rule 4(f) is read in conjunction with Article 1 of the Convention. Rule 4(f) provides that, "[*u*]*nless federal law provides otherwise*," a foreign party may be served "(1) by any internationally agreed means of service that is reasonably calculated to give notice . . . or (3) by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f). The Constitution's Supremacy Clause "gives the Hague Service Convention the force of federal law." *Luxottica*, 391 F. Supp. 3d at 825 n. 5 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)). The plain language of Article 1 of the Hague Convention provides that the Convention "*shall* apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," which is the case here. Given the force of federal law, allowing alternative service under Rule 4(f)(3) without first complying with service under the Hague would ignore the phrase – "[u]nless federal law provides otherwise." "Case law

7

[in this Circuit] supports the notion that a party must attempt service in compliance with the Hague Service Convention before petitioning for permission to serve by alternative means." *Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 CIV. 1853, 2012 WL 4801452, at *9 (S.D.N.Y. Oct. 5, 2012) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005), among other SDNY cases).

Absent any efforts to serve the Moving Defendants under the Hague Convention, Plaintiff was not entitled to alternative service in the first place. This Court should dismiss the lawsuit until Plaintiff properly serves the Moving Defendants in compliance with the Convention.

## II. Plaintiff Fails to Establish Personal Jurisdiction over Acbery and Anzir.

Plaintiff concedes that none of the 17 units of Anzir Allegedly Infringing Product sold by Anzir to the U.S. was sold to consumers in New York and that, among the 17 units of Acbery Allegedly Infringing Product sold by Acbery to the U.S., the only unit to New York was sold to Plaintiff's counsel.[5] *See* Opp'n at 10-12. Instead, Plaintiff misstates *Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158 (2d Cir. 2010) in arguing that this Court has jurisdiction under CPLR 302(a)(1) over Acbery and Anzir based on their "operation of a fully interactive website through which consumers can access the site from anywhere and purchase products." Opp'n at 9. However, *Chloe* is silent as to "whether the 'single act' of shipping the counterfeit bag to an agent of the plaintiff, by itself, constitutes an act of trademark infringement." 616 F.3d at 165 n. 3 ("we leave for another day"). The Second Circuit did not exercise jurisdiction based solely on defendants' operation of a fully interactive website; rather, it found jurisdiction based on defendants' "fifty-two separate transactions in which merchandise was shipped into New York." *Id.*

Plaintiff erroneously relies on *Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) and its progeny in contending that the mere offering of an allegedly infringing item for sale is

---

[5] The number of units sold and amount of proceeds earned can be verified with Amazon.

sufficient for personal jurisdiction. Opp'n at 10. On the contrary, the *Cartier* Court found jurisdiction based primarily on the defendants' distribution of over 150,000 copies of the catalog containing advertisements of infringing products to airline locations in New York State—not based solely upon their offering of infringing items on an interactive website. *See* 598 F. Supp. 2d at 425. *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC* is equally inapposite here, as the Court there exercised jurisdiction based on defendants' numerous sales within the State of New York. 15 CIV. 8459 (LGS), 2016 WL 3748480, at *1 (S.D.N.Y. July 8, 2016).

Moreover, *Cartier*'s observation that defendants' "sale of the single watch to plaintiffs' paralegal alone ***seems*** sufficient for the exercise of personal jurisdiction" is mere *dicta*. 598 F. Supp. 2d at 425 ("This ***in my view*** would be a sufficient basis for denying defendants' motion."). As such, it should not be given the force of law. *See In re Indu Craft, Inc.*, 749 F.3d 107, 116 n. 12 (2d Cir. 2014) (ruling that a statement that is "not essential to" the holding is non-binding *dicta*). Critically, *Cartier* noted that "a number of district court decisions—probably a majority—that have taken this view" that personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff. *Cartier*, 598 F. Supp. 2d at 425. This is consistent with this Court's observation in *Buccellati Holding Italia SPA v. Laura Buccellati, LLC* that "the vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff." 935 F. Supp. 2d 615 (S.D.N.Y. 2013). Citing to *Cartier*, the Court observed: "Even in those cases that rely on a single sale made to a plaintiff's investigator, courts have cited other contacts between the forum state and the defendant." *Id.* at 624 n. 4. In fact, *Cartier* in this respect may have been rendered invalid by *Walden v. Fiore*, 571 U.S. 277, 285 (2014). *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014) ("after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum");

9

*Art Akiane LLC v. Mardel, Inc.*, 20-CV-05643, 2021 WL 3269837, at *3 (N.D. Ill. July 30, 2021).

Because Anzir did not sell any Anzir Allegedly Infringing Product to New York and because the only sale of Acbery Allegedly Infringing Product to New York was ordered by Plaintiff's counsel to establish jurisdiction, this Court should dismiss the lawsuit against Acbery and Anzir for lack of personal jurisdiction. *See Buccellati*, 935 F. Supp. 2d 615; *Am. Girl, LLC v. Zembrka*, 2021 WL 1699928, at *5 (S.D.N.Y. Apr. 28, 2021).

Moreover, Plaintiff concedes that it is not organized in New York. Opp'n at 13. As such, Plaintiff cannot show any injury suffered in New York for the purpose of jurisdiction under CPLR 302(a)(3) because "the first effects of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business." *Panacea Sols., Inc. v. Roll*, 05 CIV 10089 RCC, 2006 WL 3096022, at *5 (S.D.N.Y. Oct. 31, 2006); *see also Am. Girl*, 2021 WL 1699928, at *7. Neither *Energy Brands Inc. v. Spiritual Brands*, Inc., 571 F. Supp. 2d 458 (S.D.N.Y. 2008) nor *Am. Network, Inc. v. Access Am./Connect Atlanta*, Inc., 975 F. Supp. 494 (S.D.N.Y. 1997) changes the analysis, as the plaintiffs in both cases were based in New York.

Plaintiff repeats its bald allegation as to purported sales "domestically and abroad, including in New York," but fails to present any evidence concerning its alleged loss of sale or customer in New York due to Acbery or Anzir. *See* Opp'n at 13. Nor can Plaintiff do so, as no customers based in New York actually purchased alleged infringing products from Acbery or Anzir, other than the purchase made by Plaintiff from Acbery. As such, under CPLR 302(a)(3), Plaintiff cannot show any injury suffered in New York. See *Panacea*, at *5; *Am. Girl*, at *8. Finally, Plaintiff tacitly concedes that neither Acbery nor Anzir derived substantial revenue from selling the products at issue by failing to address Defendants' arguments. *See* Opp'n at 12-14.

Given the foregoing, this Court lacks personal jurisdiction over Acbery and Anzir.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 7, 2022, I electronically filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send notification of such filing to all parties.

By: */s/ Zhen Pan*
Zhen Pan